BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
DARCI W. CRANE, IDAHO STATE BAR NO. 8852
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>LOIS M. SOITO,<br><br>　　　　　Defendant. | Case No. 1:19-cr-00250-DCN<br><br>**RULE 11 PLEA AGREEMENT** |

I.  **GUILTY PLEA**

1.  **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the Defendant, the attorney for the Defendant, and the Government[1] agree that the Defendant will plead guilty to counts Nine and Ten of the Indictment, which charge the Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343. The Defendant will also admit the asset forfeiture allegation in the Indictment.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement. Upon acceptance of the Defendant's guilty pleas, and the Defendant's full compliance with the other terms of this agreement, the Government, will dismiss, under Federal Rule of Criminal Procedure 11(c)(1)(A), counts One through Eight of the Indictment and under Federal Rules of Criminal Procedure 11(c)(1)(B), will recommend a sentence within the United States Sentencing Guideline (USSG) range determined by the District Court.

B.  **Oath.** The Defendant will be placed under oath at the plea hearing. The Government may use any statement that the Defendant makes under oath against the Defendant in a prosecution for perjury or false statement.

II.  **WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL**

The Defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offenses charged against the Defendant and to persist in that plea; 2) the right to a trial by jury, at which the Defendant would be presumed innocent and the burden would be on the Government to prove the Defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the Defendant was guilty of the offense; 4) the

---

[1] The word "Government" in this agreement refers to the United States Attorney for the District of Idaho.

right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the Defendant. If the Court accepts the Defendant's guilty plea, there will be no trial.

III. **NATURE OF THE CHARGES**

    A. **Elements of the Crime.** The elements of the crime of Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in counts Nine and Ten, are as follows:

        1. The defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

        2. The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

        3. The defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and

        4. The defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

    B. **Factual Basis.** The Defendant admits the following facts are true:

The defendant LOIS M. SOITO was employed by Saint Alphonsus Health System (SAHS), in Boise, Idaho, for approximately 22 years. During her employment, she worked in accounts receivable and in November 2015, she became the Manager of Cash Accounting for SAHS. The defendant's employment ended on January 31, 2019. As part of her employment, the defendant had access to the cash raised at the Festival of Trees fundraiser. While employed at SAHS, the defendant served on the leadership team of the Employee Support Team at SAHS.

Beginning in at least January 2005 through January 2019, the defendant devised a scheme to defraud SAHS to obtain money and property. The defendant collected and kept miscellaneous checks intended for SAHS rather than depositing them in the appropriate SAHS account. The defendant took some of the miscellaneous checks and fraudulently deposited them in the Employee Support Team bank account at Saint Alphonsus Medical Credit Union (SAMCU). The defendant then obtained blank, signed checks for the Employee Support Team account under the guise of reimbursing and/or paying vendors for services. Instead of using those checks for legitimate reimbursements, the defendant made the checks payable to herself and deposited them into an account she controlled at Icon Credit Union (ICON). The defendant wrote the checks to include the amount of the miscellaneous checks she fraudulently deposited in the Employee Support Team account. For example, on February 23, 2018, the defendant deposited Employee Support Team check number 1985 for $14,048.40 into her account at ICON. Again on June 22, 2018, the defendant deposited Employee Support Team check number 1986 for $21,063.56 into her account at ICON. Each time the defendant deposited an Employee Support Team check into her account at ICON, she caused an interstate wire transmission between SAMCU and ICON. This resulted in proceeds of at least $758,402.30. The defendant's misuse of the miscellaneous checks and the Employee Support Team account were material because it allowed the defendant to embezzle SAHS funds and deposit them into her accounts.

The defendant also used some of the SAHS miscellaneous checks to cover her theft of the cash funds from the Festival of Trees from at least 2014 through 2018. The defendant collected the cash from the Festival of Trees, under the guise of depositing it into the proper bank account. Instead of depositing the cash in the proper account, the defendant kept the cash and substituted miscellaneous checks, which she had misdirected from other SAHS accounts, for the deposit.

The defendant changed the deposit slip for the Festival of Trees to cover her theft. This resulted in proceeds of at least $246,732.52.

The defendant used similar methods with other accounts connected to the SAHS between approximately 2014 and 2019 to embezzle at least an additional $147,711 from the SAHS. In addition, the defendant embezzled $331,118 from the SAHS in 2005. In all instances described above, the defendant acted with the intent to defraud the SAHS.

The defendant deposited proceeds from her embezzlement into her ICON accounts as part of account ending 132. The defendant also embezzled cash, which she did not deposit, and fraudulently directed it to her personal expenses. The government obtained a seizure warrant to seize $299,043.70 from ICON. The defendant agrees that the seized money is proceeds from her wire fraud. The government also placed a *lis pendens* on the defendant's real property. The defendant admits that any equity or value in her real property derives from, or is traceable to, fraud proceeds.

### IV. SENTENCING FACTORS

   A. **Penalties.** The crime of Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in counts Nine and Ten, is punishable by:

   1. a term of imprisonment of 20 years;
   2. a term of supervised release of not more than 3 years; and
   3. a maximum fine of $250,000, and a special assessment of $100.

   B. **Supervised Release.** The Court may impose a period of supervised release. No agreement exists as to its length.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crimes to which the Defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and prosecution.

C. **Fines and Costs.** The Court may impose a fine. No agreement exists as to its amount of the fine. The Court may also order the Defendant to pay the costs of imprisonment, probation, and supervised release.

D. **Special Assessment.** The Defendant will pay the special assessments before sentencing and will furnish a receipt at sentencing. Payment will be made to:

> The United States District Court, Clerk's Office
> Federal Building and United States Courthouse
> 550 West Fort Street, Fourth Floor
> Boise, Idaho 83724

E. **Restitution.** In addition to paying any forfeiture, fine, and costs imposed, the Defendant also agrees to pay restitution equal to the full amount of loss caused to any victim. The Defendant agrees to pay restitution in the sum of at least $1,483,963.82, to the following victims: St. Alphonsus Health System. The Defendant agrees that all monetary penalties imposed by the Court, including restitution, will be due immediately and can immediately be enforced by the Government (whether through 18 U.S.C. § 3613 or otherwise). The Defendant agrees that the payment schedule or plan is neither the only method, nor a limitation on the methods, available for enforcing the judgment. It is simply a schedule or plan for minimum payments. The Defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor the Court can consider if the Defendant has accepted responsibility under U.S.S.G. § 3E1.1.

F. **Forfeiture.** The Court will enter a forfeiture order as part of the Defendant's sentence. The Defendant will immediately forfeit to the Government the property set out in: this agreement, the charging document to which the Defendant is pleading, and any Bill of Particulars. Defendant agrees that those documents provide statutory authority for forfeiture.

   1. Additionally, Defendant agrees to forfeit the following.

      a. <u>Seized Property:</u>

        1)      Approximately $299,043.70 in seized currency from ICON account ending 132.

    b.    <u>Real Property</u>:

        1)      Horseshoe Bend, Gem County, Idaho, approximately 20 acres, APN: RPC62300000110 (formerly APN: RP00408202) recorded owner: Lois M. Soito and E.S.; and

        2)      Adjacent grazing land, approximately 40 acres, APN: RP07N01E144200 (formerly APN: RP00407319) recorded owner: Lois M. Soito and E.S.

    c.    Unseized SAMCU account ending 033. Defendant agrees to the seizure or restraint of her SAMCU account and all funds therein. The Government may seek such an order, based solely on this Agreement. Defendant will make no attempt to withdraw or transfer any funds from that account

    d.    Additional property traceable to, or derived from, the proceeds of the fraud scheme. Defendant understands that the financial investigation continues and the Government is free to pursue, by any lawful means, other potentially forfeitable property.

    e.    <u>Forfeiture Money Judgment for Unrecovered Property.</u> The Court may impose forfeiture of a monetary sum, or money judgment, equivalent to unrecovered property including unrecovered proceeds of the offense of conviction obtained and controlled by the Defendant, property derived from or traceable to such proceeds, and/or unrecovered property the Defendant used to commit or facilitate the offense, as authorized by applicable statutes. Defendant agrees to a forfeiture judgment of at least $1,483,963.82.

    f.    <u>Substitute Assets Up To the Value of Unrecovered Property Subject to Forfeiture.</u> Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the Defendant agrees

to forfeit substitute assets, or any other property of the Defendant up to the value of any unrecovered property subject to forfeiture. Post-sentencing forfeiture of substitute assets does not entitle the Defendant to resentencing.

2. Defendant makes the following additional agreements and waivers related to forfeiture.

a. Regarding the above property, the Defendant: (a) is the sole owner, unless otherwise set out herein; (b) hereby withdraws any claims filed in any administrative or civil forfeiture proceeding; (c) agrees to assist fully in the forfeiture and to take all steps necessary to pass clear title to the Government; (d) will testify truthfully in any forfeiture proceeding and will not assist a third party in asserting a claim; (e) agrees to administrative, forfeiture, civil forfeiture, or abandonment, of all property described above; and (f) agrees that variations or errors in serial numbers or property descriptions shall not affect forfeiture.

b. Forfeiture is separate from all other penalties, including fines and restitution. As with other penalties, the Court will determine forfeiture at sentencing. Any stated or pleaded forfeiture amount is an "at least" amount and the Court may impose greater or additional forfeitures. The Defendant waives requirements regarding notice and pronouncement of forfeiture, including: (a) in charging documents, (b) at the change of plea hearing, (c) at sentencing, and (d) in the judgment. See FED. R. CRIM. P. 11(b)(1)(J), 32.2, and 43(a).

c. The Defendant waives all challenges and objections, on any grounds, to any forfeiture in accordance with this agreement. If this agreement is withdrawn for any reason, the Defendant waives the right to contest all administrative and civil forfeitures that began before the withdrawal. The Defendant agrees to hold the United States, its agents, and employees harmless from any claims related to seizures or forfeiture in this case or the related investigation. The forfeiture provisions of this agreement will survive the Defendant's death and

bind the Defendant's heirs, successors and assigns until forfeiture is fully collected. Any forfeited property directed to victims shall not be returned even if Defendant's conviction is overturned or abated.

        d.        The District Court shall retain jurisdiction to consider and rule on forfeiture and related issues, unless a higher Court directs otherwise.

        3.        Based on the defendant's agreements in the Plea Agreement and her continued compliance with those agreements, the USAO agrees that it will submit a restoration request to the Money Laundering Asset Recovery Section (MLARS) of the Department of Justice (DOJ) for restoration of funds that may be forfeited from the seized bank account; the defendant's residence; and an account at SAMCU, which the defendant will agree to forfeit. This agreement does not limit the USAO from pursuing other assets, or other methods, to satisfy forfeiture or restitution.

        a.        "Restoration" means that forfeited funds could be restored from forfeiture to restitution, for the benefit of the victim, and would thereby satisfy both the defendant's forfeiture and restitution obligations. There are requirements, including that the defendant does not have sufficient funds to pay both restitution and forfeiture.

        b.        The defendant understands that restoration is a discretionary function of MLARS. Neither the USAO, nor the Court, can control or guarantee MLARS' decision. The defendant acknowledges that no representations have been made to her as to the outcome of the request and that MLARS is free to deny it. If the defendant violates any term of the Plea Agreement, or fails to make honest and complete financial disclosures, that could affect negatively the consideration of restoration. However, with these limitations in mind, the USAO represents that it has conferred with MLARS and concluded that this is the type of case where restoration is possible.

**Plea Agreement**         8        Rev. May 2019

## V. SEIZED PROPERTY: ABANDONMENT AND WAIVER

The Defendant abandons, releases, and waives any interest in property seized or otherwise obtained by the Government or law enforcement in this case unless specific exceptions are noted in this agreement. Such property will be disposed of, destroyed, sold, or transferred in the Government's sole discretion. Such disposition shall not constitute satisfaction of any assessment, fine, restitution, forfeiture, cost of imprisonment, or any other penalty that this Court may impose.

## VI. UNITED STATES SENTENCING GUIDELINES

**A. Application of Sentencing Guidelines.** The Court must consider the U.S.S.G. in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to U.S.S.G. § 1B1.3.

The Court is not a party to this agreement and the agreement does not bind the Court's determination of the U.S.S.G. range. The Court will identify the factors that will determine the sentencing range under the U.S.S.G. The Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that this agreement does not bind the Court, the parties agree to the recommendations and requests set forth below.

**B. Sentencing Guidelines Recommendations and Requests.**

1. **Government's Statements at Sentencing.** The Government reserves the right to allocute fully at sentencing regarding any sentencing recommendation. The Government may rely on or submit any information, including relevant conduct, in support of its

recommendation regardless of whether the agreement or the pre-sentence investigation report contain this information. Any exception must be specified in this agreement.

2. **Acceptance of Responsibility.** If the Defendant clearly accepts responsibility for the offense, the Defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under U.S.S.G. § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the Defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the Defendant has timely notified authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the Defendant fails to meet U.S.S.G. § 3E1.1's criteria, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or decline to make the motion.

3. **Amount of Loss.** The parties agree that the amount of loss is $1,483,963.82.

4. **Downward Departure or Variance Request by Defendant.** If the Defendant wishes to seek a departure or variance, the Defendant must provide written notice to the Government, along with the reasons and basis therefore, 21 days before the date set for sentencing.

## VII. WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

A. **Waiver:** In exchange for this agreement, and except as provided in subparagraph B, the Defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution. This waiver includes

any challenge to the constitutionality of any statute of conviction including arguments that the admitted conduct does not fall within any statute of conviction.

The Defendant acknowledges that this waiver will result in the dismissal of any direct appeal or collateral attack the Defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this agreement and allow the Government to withdraw from it, as well as to take other remedial action.

If the Defendant believes the Government has not fulfilled its obligations under this agreement, the Defendant will object at the time of sentencing; further objections are waived.

    **B.**     **Exceptions:**

        1.     **Direct Appeal:** Notwithstanding subparagraph A, the Defendant may file one direct appeal if one of the following unusual circumstances occurs:

        a.     the sentence imposed by the Court exceeds the statutory maximum;

        b.     the Court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

        c.     the Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the Court.

The Defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

        2.     **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the Defendant may file an ineffective assistance of counsel claim in a 28 U.S.C. § 2255 motion.

## VIII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The Defendant agrees to provide financial information and any other information requested by a representative of the United States probation office for use in preparing a pre-sentence investigation report, and agrees that the United States probation office may share all

**Plea Agreement**            11            Rev. May 2019

financial information with the Government. Failure to execute releases or to provide information for the pre-sentence investigation report violates this agreement and relieves the Government of its obligations from it. Such failure by the Defendant and response by the Government will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests. Providing materially false information will subject the Defendant to additional penalties, including an enhancement under U.S.S.G. § 3C1.1.

### IX. DISCLOSING FINANCIAL INFORMATION

The Defendant agrees to disclose all the Defendant's assets and sources of income to the Government, including all assets over which the Defendant exercises or exercised direct or indirect control, or in which the Defendant has had any financial interest. This includes all community property. The Defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the Government. The Defendant agrees truthfully to complete a personal financial statement within 14 days from the date the Defendant signs this agreement or from the date the financial statement is provided to the Defendant or counsel, whichever is later. The Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within 7 days of the event giving rise to the changed circumstances. The failure timely and accurately to complete, sign, and update the financial statements may constitute failure to accept responsibility under U.S.S.G. § 3E1.1, as well as other things.

The Defendant authorizes the Government: (a) to obtain a credit report on the Defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain all financial records related to the Defendant.

Before sentencing, Defendant agrees not to dissipate any assets without the consent of both the Government's financial litigation unit and asset forfeiture unit. If any assets are sold,

any sale proceeds will be deposited with the Clerk of Court and, upon sentencing, paid toward any monetary penalties ordered in the judgment.

## X. NO RIGHT TO WITHDRAW PLEA

The Defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The Defendant cannot withdraw from this agreement or the guilty plea, regardless of the Court's actions.

## XI. CONSEQUENCES OF VIOLATING AGREEMENT

A. **Government's Options.** If the Defendant fails to keep any promise in this agreement or commits a new crime, the Government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the Defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from this agreement in its entirety. In addition, if the Government determines after sentence is imposed that the Defendant's breach of the agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that charge(s) may be re-prosecuted.

The Government's election to pursue any of the above options provides no basis for the Defendant to withdraw the guilty plea(s) made pursuant to this agreement.

B. **Defendant's Waiver of Rights.** If the Defendant fails to keep any promise made in this agreement, the Defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the Defendant entered a plea of guilty or which were dismissed under this agreement. In addition, for any charge that is brought as a result of the Defendant's failure to keep this agreement, the Defendant gives up: (1) any right under the Constitution and laws of the

United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the Defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare. The Defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XII. MISCELLANEOUS

**A.** **No Other Terms.** This agreement is the complete understanding between the parties, and no other promises have been made by the Government to the Defendant or to the attorney for the Defendant. This agreement does not prevent any Governmental agency from pursuing civil or administrative actions against the Defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does not bind or obligate Governmental entities other than that specified as the Government in this agreement (i.e., the United States Attorney's Office for the District of Idaho).

**B.** **Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the Defendant's notification of acceptance of this agreement no later than 5:00 p.m. on October 18, 2019.

## XIII. UNITED STATES' APPROVAL

I have reviewed this matter and the agreement. This agreement constitutes a formal plea offer from the Government. Any oral discussions with the Defendant and defense counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the Government and is rescinded. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

_____     __10/25/19_____
DARCI W. CRANE                                                        Date
Assistant United States Attorney

### XIV. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this agreement with my attorney. I understand the agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case. I understand that this agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer valid and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including entering a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____     __10-24-19_____
LOIS M. SOITO                                                          Date
Defendant

I have read this agreement and have discussed the contents of the agreement with my client. This document accurately sets forth the entirety of the agreement. I have conveyed all written offers from the Government to the Defendant pursuant to Missouri v. Frye, 132 S. Ct.

**Plea Agreement**                             15                               Rev. May 2019

1399, 1408-09 (2012). I understand that this agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer valid and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States. I concur in my client's decision to plead guilty as set forth above.

_____  
EDWARD DINDINGER  
Attorney for the Defendant

24 OCT 2019  
Date